UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN EDWARD ROACH,<br><br>            Petitioner,<br><br>   v.<br><br>ELDON VAIL,<br><br>            Respondent. | CASE NO.  C09-05155RBL/JRC<br><br>REPORT AND RECOMMENDATION<br><br>Noted For:  June 4, 2010 |

The underlying Petition for a Writ of Habeas Corpus has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and 636 (b)(1)(B), and Local Magistrate Judge's Rule MJR3 and MJR4.

Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254, from a 2006, Pierce County Superior Court conviction for assault of a child in the second degree.   The Pierce County Superior Court sentenced him to 41months incarceration, plus community supervision after release (Dkt. # 1).

Respondent has filed an answer showing that the issues raised in this petition are unexhausted. Also, because petitioner is no longer in custody and is finished with community supervision, he cannot return to state court, thus, the petition is procedurally barred (Dkt. # 23).

Petitioner argues his failure to exhaust does not prevent relief as he is actually innocent (Dkt. # 25). Petitioner fails to show actual innocence and his only evidence regarding innocence is impeachment testimony, which cannot form the basis for claim of actual innocence. Thus, the petition should be dismissed as procedurally barred.

## FACTS

Petitioner was in custody pursuant to a Pierce County conviction by jury trial for one count of second degree child assault (Dkt. # 24, Exhibit 1). He was sentenced to 41 months of incarceration followed by community custody. He has served his sentence and is no longer on community custody. (Dkt. # 23, page 1).

Respondent set forth the facts surrounding the crime and the procedural history of the case and petitioner has not objected. The court adopts respondent's statement of the facts and procedural history as set forth below:

> The Court of Appeals summarized the facts of Mr. Roach's crime and trial proceedings as follows:
>
>> John and Deborah Roach had a lengthy and acrimonious divorce and child custody battle. John was the designated custodial parent of both of their sons, Z.R. and W.R.  Z.R. had been living with his father for about one year and visited Deborah on weekends. Both children were enrolled in School Kids' Clubhouse in Puyallup, Washington. At the time of the present incident, Z.R. was eight years old.
>> On August 11, 2004, Z.R. arrived at the day care center with bruises on his face. Shelle Silvas, the day care director, brought Z.R. into her office and asked him if he had any "owies." 10 RP at 449. Z.R. said that he did and lifted his shirt to show bruises on his back and shoulders. Without Silvas asking how he got the bruises, Z.R. said "daddy did it with his keys." 10 RP at 456.
>> Silvas telephoned Peggy Emory, CFO and co-owner of the day care to come and examine the bruising on Z.R. Emory testified that Z.R. had bruises on his lower jaw and shoulder that were "pretty bright" and "acute". 13 RP at 864. When Emory asked Z.R. how the bruising occurred, he said that he lost his father's keys and that when his father could not find the keys, he got mad, poured syrup in his hair, and then hit him with the keys. When Z.R. stated that his father hits him "lots," the day

Report and Recommendation Page | 2

care providers decided to call Child Protective Services (CPS). 13 RP at 868. Emory testified that Silvas and her husband each called CPS but that nobody came to investigate. When John came to pick up Z.R. and W.R. they were both released to him.

Deborah had scheduled visitations with Z.R. and W.R. on the second Saturday of every month. August 14, 2006, was her next scheduled visitation day. Near the end of the visitation, Deborah noticed bruises on Z.R.'s hand and body. She then took Z.R. to Mary Bridge Children's Hospital.

Deborah met with a hospital social worker and the police that night, and brought the boys back the following week to be interviewed at the child Advocacy Center. During the interview, Z.R. first said that when he lost his father's keys, his father hit him with an open fist, but then changed his answer to say a closed fist. Z.R. then said that his dad also had put flour and syrup on the top of his head, and then spat in his face.

At trial, the responding deputy testified that, upon arriving at Mary Bridge Children's Hospital, he witnessed bruising to the left side of Z.R.'s face, left lower back, left shoulder, and hand. The court admitted several photographs documenting the extent and appearance of Z.R.'s injuries. The deputy asked Z.R. how he got the bruises, to which Z.R. responded that this (sic) father had beaten him. John was arrested later that night.

Z.R. testified at trial and said that his father got mad at him for losing his keys and then put flour and syrup in his hair, kicked him in the back and on his arms while he was on the floor, and that his dad made the black marks on his body. Z.R. did not remember talking to anyone at the day care about the incidents but he did remember talking to the social worker at the hospital.

Undeniably, Z.R. gave differing explanations of how he had been bruised. John's defense was that Deborah was angry that she lost custody of Z.R. and that she was coaching Z.R. to make false allegations. At trial, John wanted to admit evidence that Deborah had previously made unfounded allegations that he had assaulted Z.R. on other occasions. Specifically, John sought to admit evidence concerning: (1) a 2002 hospital visit where a social worker indicated that Deborah appeared to be prompting Z.R. to name his father as the source of an injury; (2) Deborah's call to the police in Mary 2004, which prompted the guardian ad litem (GAL) in their dissolution case to require a written note from her stating that she would not call the police if allowed visitation; and (3) a letter written from Sally Gray regarding Deborah's claim that another boy in the day care had given Z.R. a black eye and Deborah's efforts to document that injury by taking him to a fire station.

The trial court heard John's offer of proof on all three issues. Deborah did not recall any events regarding John's allegations, but denied ever trying to get the children to make false accusations against him. The trial court judge said that because Deborah had virtually no recollection

about these events, he was not inclined to allow John to ask about it on cross-examination.

The State claims that, despite the trial court's ruling, John was allowed to demonstrate Deborah's bias and motive to lie in cross-examination when she acknowledged that she felt the GAL was "totally against [her]." 13 RP at 832. Also, the State notes that John asked several questions about coaching the children. But John disagrees, and in this appeal argues that the evidence the trial court ruled inadmissible was highly probative and crucial to his defense theory because it related to Deborah's conduct and shows that Z.R.'s different accounts were a product of his mother's coaching.

(Dkt. # 24, Exhibit 5(footnotes omitted)).

## PROCEDURAL HISTORY

Mr. Roach appealed. (Dkt. # 24, Exhibit 2). He presented the following grounds for review:

A. ASSIGNMENT OF ERROR

1. The trial judge erred in giving Instruction No. 7.

2. The trial judge erred in forbidding defense counsel to question a witness on her bias and motive to testify against the defendant.

B. ISSUE PERTAINING TO THE ASSIGNMENT OF ERROR

1. Where the statute defining second degree assault of a child requires actual battery is it err for the trial court to give an instruction that permits the jury to find the defendant guilty even if no actual battery occurred?

2. Where a witness testifies to statements the child victim allegedly made to her, did the trial court err in prohibiting the defense from cross-examining her about her bias and motive to lie, including evidence of her previous efforts to "coach" the child into accusing the defendant [of] assault?

Id. at 1.

Mr. Roach, pro-se, submitted statements of additional grounds for review. (Dkt. # 24,Exhibit 3), Appellant's Opening Supplemental Brief Statement of Additional Grounds, State v. Roach, Washington Court of Appeals Cause No. 35545-1-II. Mr. Roach writes his pleadings in a very confusing manner. Respondent is unable to cite verbatim to the grounds for review he presented, and will to the best of his ability, present a summary of his claims below:

- GAL (Guardian Ad Litem) representative should have been allowed to testify about the alleged victim's reputation for lying in the community.

- Both defense attorney and the prosecutor knew the brother of the victim testified Mr. Roach did not touch the alleged victim, but refused to bring the witness to trial.

- Missy Porter made a false report because she was a friend of Mrs. Roach, and she lied to the police and CPS (Child Protective Services).

- Detective Berg did not interview Missy Porter.

- 6th Amendment Right to Confrontation Clause required that Mr. Roach was allowed to cross-examine Mrs. Roach and Missy Porter.

- The trial court erred in prohibiting Mr. Roach from cross-examining the witness about her bias and the motive to lie including evidence of previous efforts to coach the child into accusing Mr. Roach of assault.

- Mr. Roach was prejudiced by the denial of his motion for [the] expert assistance of Dr. Ernest.

- Ineffective assistance of counsel (?) for not calling Missy Porter as a witness at trial.

- Ineffective assistance of counsel (?) because counsel refused to question Dr. Ernest and refused to let him testify.

- GAL representative should have been allowed to testify as to what he knew about the alleged victim.

- The prosecutor and the court suppressed the alleged victim brother's testimony.

- Mr. Roach had a right to cross-examine Dr. Ernest and GAL on character evidence.

- Counsel was ineffective (?) because he filed a motion to suppress evidence and motion to admit character evidence after trial.

- Prosecutor committed misconduct by suppressing evidence.

(Dkt. # 24, Exhibit 3). The Washington State Court of Appeals affirmed the conviction (Dkt. # 24, Exhibit 5). Petitioner filed a motion for discretionary review raising the following grounds for review:

1. Did the Court of Appeals err in concluding that Roach could be convicted without proof of an actual battery?

2. Was the violation of Roach's right to confrontation harmless?

(Dkt. # 24, Exhibit 6). Petitioner presented no less than four pro se filings, which were accepted as supplemental pleadings. The documents are confusing and the court adopts respondent's summary as there was no objection filed. The grounds raised pro se in the first supplemental filing are:

> The state and CPS hid the fact Missy Porter's report was false.
>
> The state and CPS realized Missy Porter's story was false and changed it from what she saw to what the daycare personnel saw.
>
> The court should determine CPS was suppressing the fact the alleged victim was caught lying and stealing.
>
> GAL representative should have been allowed to testify what he was told about the victim.
>
> The prosecutor changed witnesses to protect himself (?).
>
> Defense attorney was ineffective for filing a character motion after trial.

(Dkt. # 24, Exhibit 7). In the next motion he raised the following grounds for relief:

> It was a constitutional error for the trial court to instruct the jury on uncharged offenses regardless of the strength of the evidence admitted at trial (?).
>
> The state told the jury that an assault could be accomplished solely by creating apprehension or fear of bodily injury in another. That would be insufficient under the actual count of assault charge in this case. State instruction 7 was erroneous.
>
> Defense had a constitutional right to present evidence of the ex-wife's bias and motive to lie.
>
> Teacher's, counselor's, and foster mother's statements raise an issue of the alleged victim's credibility problem.
>
> CAL representative should have been allowed to testify about the alleged victim's credibility reputation.

> The affidavit of probable cause for the warrant contained a material misrepresentation of fact.
>
> The state suppressed the testimony of Missy Porter and represented it was not her, but the day care personnel that called CPS.
>
> The credibility of the police and CPS is in question because they observed the forensic interview of the alleged victim and his brother (?).

(Dkt. # 24, Exhibit 8). The next filing by Mr. Roach was in letter form and the Supreme Court considered the pleading as another supplement. The grounds raised have been summarized by respondent as follows:

> 6th and 14th Amendment were violated by Mr. Roach being prevented from cross examining Debora Roach.

(Dkt. # 24, Exhibit 9). Mr. Roach then filed a "statement of additional authorities" in which he raised the following grounds for relief:

> GROUND #1
> THE TRIAL COURT ERROR IN NOT ADMITTING CHARACTER EVIDENCE FOR TRUTHFULNESS AND UNTRUTHFULNESS OF THE STATE'S KEY WITNESS.
>
> GROUND #2
> THE TRIAL COURT'S REFUSAL TO GRANT CROSS-EXAMINATION OF A COURT APPOINTED OFFICER OF THE COURT. KNOWN AS THE GUARD AD LITEM. THAT HAD SUBMITTED A REPORT TO THE COURT IN AUGUST, 2004. NO. 01-3-03135-9.
>
> GROUND #3
> TRIAL COURT VIOLATED THE 6 & 14, AMENDMENTS OF THE STATE AND FEDERAL CONSTITUTIONS
>
> GROUND #4
> TRIAL COURT REFUSED TO ADMITT (sic) IN TO EVIDENCE THE PSYCHIATRIC RECORDS OF THE STATE'S KEY WITNESS

1    (Dkt. # 24, Exhibit 10).  The Washington State Supreme Court denied review.  Mr. Roach filed a

2    Personal Restraint Petition in the Washington Court of Appeals in which he raised the following

3    grounds for relief:

> GROUND ONE.
>
> INEFFECTIVE ASSISTANCE OF COUNSEL.  COUNSEL FAILED TO GET CREDIBILITY OF STATE WITNESSES ACROSS TO THE COURT. INCLUDING A CPS REPORT THAT SHOW'S THE DAYCARE HAS COMMENTED PERJURY. IN THIS MOTION THAT ONLY HAS HIS NAME ON IT. EXHIBIT. ONE. AND COUNSEL FAILURED [sic] KNOWINGLY HE HAD PHONE RECORDS OF DEFENDANT'S CALL'S LETTING THE BOYS TALK TO THERE MOTHER. ALONG WITH TWO OTHER WITNESSES STATEMENT THAT WHERE FILED IN THE JUVENILE COURT. A LUTHER COLEMAN & A CLAUDE V. CORIGAN. THAT BOTH GAVE STATEMENT'S [sic] TO THE COURT. AND BOTH ATTORNEY'S.
>
> GROUND TWO.
>
> PROSECUTOR MISCONDUCT. THE STATE KNOWINGLY SUPPRESSED TO THE COURT THE DEFENDANT MOTION FOR PRETRIAL HEARING ON CHILD HEARSAY STATEMENTS AND TRIAL MEMORANDUM THAT ADDRESSES THE VICTIM CREDIBILITY. ALONG WITH PAGE 6 OF THIS MOTION THAT STATE'S [sic]ON JANUARY 20, 2004. A DR TIM EARNEST, MD. DOES WRITE THE VICTIM HAS CREDIBILITY ISSUES. AND DEFENDANT HAD A RIGHT TO HAVE THE COURT ADDRESS THIS ISSUES. DEFENDANT QUOTE CASE. <u>DEPT, OF ANDERSON</u> 134 WN APP. 309, 318. P.3D 140. DV. 2. (2006) THE COURT SHOULD ADMIT EXPERT TESTIMONY IF IT WILL ASSIST THE TRIER OF FACT TO UNDERSTAND THE EVIDENCE OR TO DETERMINE A FACT.
>
> GROUND THREE.
>
> THE WITNESS STATEMENT'S OF BOTH CLAUDE CORIGAN AND LUTHER COLEMAN. HOW THEY SEEN [sic] BOTH CHILDREN FIGHTING IN THE HOUSE AND OUTSIDE THE HOUSE. . ALONG WITH THE GAL. THAT INTERVIEWED ALL THREE PEOPLE THAT LIVED IN THE HOUSE THAT GIVE STATEMENT TO THE JUVENILE COURT ON AUG. 19/2004. THUS: THE 6 & 14. AMEND. WERE BROKEN IN THIS COURT TRIAL.

(Dkt. # 24, Exhibit 12).  The petition was denied (Dkt. # 24, Exhibit 14).

Petitioner then filed for discretionary review raising the following grounds for review:

1   1.   DID THE COURT ERR INCONCLUDING THAT ROACH RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL?

2   2.   THE VICTIM WAS IMPROPERLY COACHED;

3.   THE STATE COMMITTED PROSECUTORIAL MISCONDUCT.

(Dkt. # 24, Exhibit 15). The court denied review (Dkt. # 24, Exhibit 16).

The court has summarized the following grounds for review from Mr. Roach's Federal Habeas Corpus Petition (Dkt. # 7):

THE PIERCE COUNTY PROSECUTOR HAS COMMENTED PERJURY.

THE STATE PROSECUTORS BOTH KNEW ON THE COURT'S RECORDS THAT THIS CHILD HAD A CREDIBILITY PROBLEM. AND HIS WAS DOCUMENTED WITH THE COURT THAT SUPPRESSED THIS INFORMATION TO THE JURY.

THE STATE PROSECUTOR AND JUDGE SUPPRESSED CREDIBILITY PROBLEMS OF THE VICTIM TO THE TRIER OF FACT

THE TRIAL COURT WAS MISLED BY THE PROSECUTOR WHEN THE PROSECUTOR KEPT ARGUING THAT MRS. ROACH HAD NO KNOWLEDGE AND NO OPPORTUNITY TO COACH THE BOY.

THE DEFENDANT ATTORNEY HAS COMMENTED PERJURY HE WAS INEFFECTIVE ASSISTANCE OF COUNSEL
HE LIED ON COURT RECORD THAT THERE WAS NO EVIDENCE THAT ZR HAD A CREDIBILITY PROBLEM. WHEN IN FACT HE FILED TWO DIFFERENT MOTIONS THAT STATE OTHER WISE.

ATTORNEY ALSO FAILED TO BRING IN THE FOSTER MOTHER THAT REPORTED TO GOOD SAMARITAN BEHAVIORAL HEALTH CONSULTATION DATED DECEMBER 15, 2004 THAT ZR IS A DEFIANT LIER.

Respondent contends that petitioner has failed to exhaust any of his grounds for relief. After review of the record the court agrees. Petitioner alleges he is actually innocent, however, he presents nothing but impeachment evidence in support of his claim and impeachment

evidence provides no basis to support a claim of actual innocence.  Calderon v. Thompson, 523 U.S. 538, 563 (1998).

## EVIDENTIARY HEARING NOT REQUIRED

Evidentiary hearings are not usually necessary in a habeas case.  According to 28 U.S.C. §2254 (e) (2) (1996), a hearing will only occur if a habeas applicant has failed to develop the factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C. §2254 (e) (2) (1996).

Petitioner's claims rely on established rules of constitutional law.  Further, there are no factual issues that could not have been previously discovered by due diligence.  Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime.  Therefore, this court concludes that an evidentiary hearing is not necessary to decide this case.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28 U.S.C. § 2254 (a) (1995).  The Supreme Court has stated many times that federal

habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254 (d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254 (e) (1).

## DISCUSSION

1.  *Exhaustion.*

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. Duncan v. Henry, 513 U.S. 364 (1995). In order to bring a ground for relief to this court, petitioner must have exhausted the claim at every level of appeal in the state courts. Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992). It is not enough that all the facts necessary to support the federal claim were before the state courts. Id. *citing* Picard v. Connor, 404 U.S. 270 (1971) *and* Anderson v. Harless, 459 U.S. 4 (1982). The state courts must also be given the opportunity to rule before the federal court may rule on the petition. A petitioner may not change his ground for relief and must present the claim on the same theory and basis in state and federal court. Hudson v. Rushen, 686 F.2d 826, 829-30 (9th Cir. 1982), *cert. denied* 461 U.S. 916 (1983).

Petitioner presents this court with the theory that the prosecutor and his counsel committed perjury in presenting the case to the jury (Dkt. # 7). At the state court level, he claimed prosecutorial misconduct, and ineffective assistance of counsel, but did not claim either of these entities committed perjury. He did not present these grounds for relief at any state level. The grounds for relief are unexhausted.

2.  *Procedural Bar in federal court*.

When a state prisoner defaults on his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice, or show that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). Federal habeas review is also barred where the petitioner has not exhausted state remedies but the state's highest court would now find the claim to be procedurally barred. Coleman, at 733; Noltie v. Peterson, 9 F.3d 802, 805 (9th Cir. 1993).

The state court would now find petitioner's claims barred for three reasons: First, petitioner has completed both direct appeal and collateral review so any further filing would be barred as second or successive pursuant to RCW 10.73.140; Secondly, it has been over one year since the criminal conviction became final and any further attempt to file in state court would be time barred pursuant to RCW 10.73.090. Finally, petitioner is no longer under any restraint and lacks standing to file a Personal Restraint Petition for that reason alone.

3.  *Actual Innocence.*

Petitioner urges the court to consider his claim based on the argument that he is actually innocent (Dkt. # 25). To succeed on a claim of actual innocence, the petitioner must do more than point out inadequacies in the prosecution's evidence. Renz v. Scott, 28 F.3d 431, 432-33

(5th Cir. 1994). To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. Calderon v. Thompson, 523 U.S. 538 (1998). Impeachment evidence provides no basis for finding a miscarriage of justice. Id. at 563. The evidence petitioner wishes to introduce is impeachment evidence as to Z.R.'s credibility and evidence of bias on the part of other witnesses. As in Calderon, the evidence is "a step removed from evidence pertaining to the crime itself." Id.

Petitioner has failed to show a viable claim that he is actually innocent. The petition is procedurally barred.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c) (3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

## CONCLUSION

Petitioner has presented his grounds for relief in a context that is different from the ones raised in state court. His grounds for relief are unexhausted but procedurally barred. While petitioner raises the possibility of actual innocence to excuse his procedural default, he fails to

1 support his claim with evidence of innocence and instead relies on impeachment evidence which

2 does not show actual innocence.  The petition is subject of dismissal for procedural default.

3 Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4 fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P.

5

6 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.

7 <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P.

8 72(b), the clerk is directed to set the matter for consideration on June 4, 2010, as noted in the

9 caption.

10 DATED this 10th day of May, 2009.

11

12

13 J. Richard Creatura
United States Magistrate Judge
14